FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 05, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>DANIEL MAY-DELGADO,<br><br>　　　　　Defendant. | NO: 2:22-CR-103-RMP-1<br><br>ORDER DENYING MOTION TO DISMISS INDICTMENT |

   BEFORE THE COURT is Defendant Daniel May-Delgado's Motion to Dismiss Indictment, ECF No. 30.  On August 16, 2022, Mr. May-Delgado was indicted for violating 8 U.S.C. § 1326, Alien in the United States After Deportation.  ECF No. 1.  Mr. May-Delgado moves to dismiss the Indictment by collaterally attacking the removal proceedings upon which the Indictment is premised, pursuant to 8 U.S.C. § 1326(d).  The Government opposed in its response, ECF No. 32, and Defendant replied, ECF No. 33.

   A hearing was held in this matter on March 28, 2023.  Mr. May-Delgado, who is not in custody of the U.S. Marshal, appeared before the Court represented by

ORDER DENYING MOTION TO DISMISS INDICTMENT ~ 1

Assistant Federal Defender Carter Powers Beggs. Assistant United States Attorney Timothy J. Ohms appeared for the Government. After hearing from counsel and having reviewed the record and relevant law, the Court is fully informed.

## BACKGROUND

Mr. May-Delgado first came to the United States from Mexico in approximately 2001, when he was around 20 years old. *See* ECF No. 30-3 at 2. He resided in San Diego, California, where he began a relationship with his now ex-wife, who was a lawful permanent resident at the time. *Id.* They started a family and married in 2007. *Id.* After the birth of their third child in 2008, the family moved to Wenatchee, Washington. *Id.* Throughout this time, Mr. May-Delgado worked in the agricultural industry to support his wife and their three U.S. citizen children. *Id.*

On July 13, 2010, Mr. May-Delgado was arrested in Chelan County for driving without a license. ECF No. 30-4 at 2. He was identified as an undocumented noncitizen and immigration authorities lodged a detainer against him. *Id.* On July 22, 2010, Mr. May-Delgado was served with a Notice to Appear for Removal Proceedings. ECF No. 32-2. On July 26, 2010, he was served with a Warrant for Arrest of Alien. ECF No. 32-3.

On August 6, 2010, Mr. May-Delgado appeared before an Immigration Judge ("IJ") in Tacoma, Washington, for a removal hearing. ECF No. 33-1; *see also* ECF Nos. 30-5; 30-6. The IJ first addressed the group of individuals through a Spanish-

ORDER DENYING MOTION TO DISMISS INDICTMENT ~ 2

1  speaking interpreter. ECF No. 33-1 at 3. During this group address, the IJ explained

2  that each respondent had been charged with a violation of immigration law and that

3  they faced removal from the United States. *Id.* at 3-4. The IJ confirmed that each

4  respondent had received a list of their appeal rights and stated that they could appeal

5  his decision to a higher court. *Id.* at 4. After placing the group of respondents under

6  oath, the IJ proceeded to call each up individually. *Id.* at 5-6.

7  When Mr. May-Delgado's case was called, the IJ asked if Mr. May-Delgado

8  wanted time to meet with an attorney or if he wanted to discuss his case that day. *Id.*

9  at 6. Through an interpreter, Mr. May-Delgado responded, "I don't have a way to

10  fight for my case, so I would like it if you can give me voluntary departure so I can

11  go back to Mexico." *Id.*

12  The IJ replied, "So it sounds like you don't want an attorney, is that what

13  you're telling me?" *Id.* Mr. May-Delgado responded yes and stated that he did not

14  "have any way to fight for my case or to pay for an attorney." *Id.* The IJ then

15  confirmed that Mr. May-Delgado had a copy of his Notice to Appear. *Id.* at 7.

16  When the IJ asked Mr. May-Delgado if he understood the rights that the IJ had

17  explained to him that morning, Mr. May-Delgado responded, "Yes." *Id.*

18  Mr. May-Delgado confirmed that he was not a citizen of the United States,

19  that he was a citizen of Mexico, and that he had entered the United States around

20  March 2010 without inspection or permission. *Id.* He acknowledged that he

21  understood that he was being removed from the United States because he was

ORDER DENYING MOTION TO DISMISS INDICTMENT ~ 3

1  present without having been admitted. *Id.* at 7-8. He stated that he wanted to be

2  returned to Mexico and was not afraid of returning there. *Id.* at 8. Based on Mr.

3  May-Delgado's responses, the IJ found that he was removable as charged. *Id.* at 8.

4  The IJ next asked Mr. May-Delgado a series of questions. In response, Mr.

5  May-Delgado stated that he first came to the United States in 2000 and that apart for

6  a two-month visit to Mexico, he had been in the United States since that time. *Id.* at

7  8-9. Mr. May-Delgado stated that he did not have any documents, such as a visa,

8  that would allow him to remain in the United States, and that no one had applied for

9  a visa on his behalf. *Id.* at 9. Mr. May-Delgado indicated that while he did not have

10 parents or grandparents who were United States citizens, his wife was a lawful

11 permanent resident, and their three children were United States citizens. *Id.*

12 The IJ then stated that Mr. May-Delgado was "eligible for voluntary

13 departure," but that he would not grant voluntary departure because Mr. May-

14 Delgado had been given "eight prior voluntary returns by the Border Patrol." *Id.* at

15 9-10.

16 The IJ proceeded to inform Mr. May-Delgado that he could be eligible for

17 cancellation of removal. *Id.* at 10. After explaining the necessary qualifications, the

18 IJ indicated to Mr. May-Delgado that he might face difficulty in meeting the

19 requirements for cancellation of removal. *Id.* at 11-12. When the IJ asked if he

20 would like to apply for cancellation of removal, Mr. May-Delgado declined and

21 opted instead for removal to Mexico. *Id.* at 12.

ORDER DENYING MOTION TO DISMISS INDICTMENT ~ 4

Finally, the IJ told Mr. May-Delgado that he could "appeal the decision" or "accept it as a final decision." *Id.* Mr. May-Delgado responded, "Yes, I accept it as the final decision." *Id.* Mr. May-Delgado then asked when he would be returned to Mexico, to which the IJ responded, "[i]n the next few days," and the hearing concluded. *Id.* at 13.

On August 7, 2010, Mr. May-Delgado was removed to Mexico. ECF No. 32-5. On August 16, 2022, Mr. May-Delgado was indicted for violating 8 U.S.C. § 1326, Alien in the United States After Deportation. ECF No. 1. Now, Mr. May-Delgado moves to dismiss the indictment by collaterally attacking the underlying removal order, pursuant to 8 U.S.C. § 1326(d).

## LEGAL STANDARD

"A defendant charged under § 1326 has a due process right 'to collaterally attack his removal order because the removal order serves as a predicate element of his conviction.'" *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014), *abrogated on other grounds by Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959 (2020) (quoting *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004)). Pursuant to 8 U.S.C. § 1326(d), a defendant charged with illegal reentry after removal may collaterally attack an underlying removal order. To succeed in a collateral attack, the defendant must demonstrate:

(1) exhaustion of "any administrative remedies that may have been available to seek relief against the order";

ORDER DENYING MOTION TO DISMISS INDICTMENT ~ 5

(2) the removal proceedings at which the order was issued improperly

deprived the defendant of the opportunity for judicial review; and

(3) the entry of the removal order was fundamentally unfair.

8 U.S.C. § 1326(d).

To satisfy the third prong, § 1326(d)(3), the defendant must establish two elements. *See Raya-Vaca*, 771 F.3d at 1201-02. First, the defendant bears the burden of establishing that defects in the underlying deportation proceeding violated the defendant's due process rights. *Id*. Second, the defendant must show that the violation caused prejudice. *Id*.

## DISCUSSION

**First and Second Prongs of 8 U.S.C. § 1326(d)**

As noted above, a defendant must exhaust administrative remedies and show deprivation of judicial review before succeeding in a collateral attack of a removal order. *See* 8 U.S.C. § 1326(d)(1)-(2). Mr. May-Delgado argues that he satisfied § 1326(d)(1) because his appeal waiver was neither considered nor intelligent, and therefore rendered further administrative remedies unavailable. ECF No. 30 at 17-18. He further argues that he satisfied § 1326(d)(2) because his improper appeal waiver deprived him of judicial review. *Id*. at 15.

Mr. May-Delgado contends that the Supreme Court's recent affirmance that each of the statutory requirements of § 1326(d) is mandatory does not affect the analysis in his case. ECF No. 30 at 18 (citing *United States v. Palomar-Santiago*,

ORDER DENYING MOTION TO DISMISS INDICTMENT ~ 6

141 S. Ct. 1615 (2021)). In *Palomar-Santiago*, the Supreme Court held that a defendant whose prior removal order was premised on a conviction that subsequently was found not to be a removable offense was not excused from meeting the first two prongs of § 1326(d). 141 S. Ct. at 1621. In so holding, the Supreme Court overturned prior Ninth Circuit interpretations of § 1326(d) that had excused a defendant from proving the first two prongs if they were not convicted of an offense that made them removable. *Id.* at 1620 (citing *United States v. Ochoa*, 861 F.3d 1010, 1015 (9th Cir. 2017)).

Mr. May-Delgado asserts that he does not seek excusal through the extra statutory exceptions the Supreme Court deemed impermissible in *Palomar-Santiago* to satisfy § 1326(d)(1) and (2), but rather relies on an improper appeal waiver to satisfy the statutory requirements. ECF No. 30 at 19; *see also* ECF No. 33 at 8.

The Government argues that *Palomar-Santiago* controls in this case. *See* ECF No. 32 at 14-15. Because the Supreme Court's holding abrogates the Ninth Circuit's administrative exhaustion excusal doctrine, the Government avers, Mr. May-Delgado's failure to exhaust administrative remedies is fatal to his collateral attack. *See id.* at 10.

The Court recognizes that the Ninth Circuit has expressed doubt about "the continued vitality" of its authority to excuse a defendant from establishing each element of § 1326(d). *See, e.g.*, *Zamorano v. Garland*, 2 F.4th 1213, 1225 (9th Cir. 2021) (stating that *Palomar-Santiago* "casts doubt on the continued vitality of our

ORDER DENYING MOTION TO DISMISS INDICTMENT ~ 7

exhaustion excusal rule under § 1326(d)."); *Alam v. Garland*, 11 F.4th 1133, 1138 (9th Cir. 2021) (Bennett, J., concurring) (stating that "[i]n my view, none of [the exhaustion excusal] rules survive *Palomar-Santiago*."). The Ninth Circuit, however, has not directly addressed the question. *See United States v. Castellanos-Avalos*, 22 F.4th 1142, 1146 (9th Cir. 2022) (stating that "[w]e are also mindful of recent opinions by our court expressing doubt about the continued vitality of our § 1326(d) doctrines after *Palomar-Santiago*" but concluding that it was "largely unnecessary to apply *Palomar-Santiago*" to the facts of the case).

District courts in the Ninth Circuit have come to different conclusions regarding *Palomar-Santiago*'s effect on cases where a defendant bases a collateral attack on grounds different from those in *Palomar-Santiago*. *Compare United States v. Davila-Chavez*, No. 5:19-cr-181, 2022 WL 4292965, at *6-*7 (N.D. Cal. Sept. 16, 2022) (holding that the IJ's failure to meaningfully advise the defendant of his eligibility for voluntary departure rendered his appeal waiver as neither considered nor intelligent and that "under current Ninth Circuit authority, Defendant is excused from complying with § 1326(d)(1) and (d)(2)" because "[a]t present . . . Ninth Circuit authorities regarding exhaustion excusal remain binding") *with United States v. Patricio-Cazares*, No. 2:20-CR-26, 2023 WL 2335350, at *1, *2 (E.D. Wash. Mar. 2, 2023) (holding that despite the IJ's failure to give the defendant the opportunity to apply for voluntary departure, the defendant neither exhausted available administrative remedies nor was improperly deprived of judicial review

ORDER DENYING MOTION TO DISMISS INDICTMENT ~ 8

because *Palomar-Santiago* "is clearly irreconcilable with previous Ninth Circuit rules excusing defendants from § 1326(d)'s requirements in some circumstances").

The Court finds that it need not reach the parties' arguments regarding the first and second prongs of § 1326(d), nor add to the confusion in the wake of *Palomar-Santiago*. During oral argument, the Government invited the Court to decide the case based on the third prong of § 1326(d). Because the Court agrees with the Government's contention at oral argument that the prejudice element required to establish fundamental unfairness under § 1326(d)(3) is dispositive in this case, the Court proceeds to address this inquiry.

**Third Prong of 8 U.S.C. § 1326(d)**

As previously indicated, § 1326(d)(3) requires a defendant to demonstrate that entry of the underlying removal order was fundamentally unfair. *See* 8 U.S.C. § 1326(d)(3). To satisfy fundamental unfairness under § 1326(d)(3), a defendant must establish (1) that defects in the underlying deportation proceeding violated the defendant's due process rights; and (2) that prejudice resulted. *See United States v. Raya-Vaca*, 771 F.3d 1195, 1201-02 (9th Cir. 2014).

***Due Process Violation***

The Court assumes *arguendo*, but does not address on the merits, that Mr. May-Delgado met his burden of showing a due process violation, the first element required to show fundamental unfairness under § 1326(d)(3). The Court proceeds to consider whether Mr. May-Delgado has met his burden of showing prejudice.

ORDER DENYING MOTION TO DISMISS INDICTMENT ~ 9

**Prejudice**

"In order to establish prejudice, [a defendant] does not have to show that he actually would have been granted relief. Instead, he must only show that he had a 'plausible' ground for relief from deportation." *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000) (quoting *United States v. Arce-Hernandez*, 163 F.3d 559, 563 (9th Cir. 1998)). "A plausible claim to relief . . . requires some evidentiary basis on which relief could have been granted, not merely a showing that some form of immigration relief was theoretically possible." *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1049-50 (9th Cir. 2012).

Courts use a two-step process to determine whether a noncitizen claiming eligibility for voluntary departure has made a plausible showing that an IJ presented with all the facts would exercise discretion in the noncitizen's favor. *United States v. Gonzalez-Flores*, 804 F.3d 920, 927 (9th Cir. 2015) (citing *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1263 (9th Cir. 2013)).

First, a court considers the positive and negative factors an IJ would consider relevant to a discretionary grant of voluntary departure. *Rojas-Pedroza*, 716 F.3d at 1264-65. Positive factors include "long residence, close family ties to the United States, and humanitarian needs." *Id.* at 1265. Negative factors include "the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and any other evidence of bad character or the undesirability of the

ORDER DENYING MOTION TO DISMISS INDICTMENT ~ 10

applicant as a permanent resident." *Id.* (quoting *Matter of Arguelles-Campos*, 22 I. & N. Dec. 811, 817 (BIA 1999)).

Second, the court considers whether, "in light of these factors and the circumstances of the alien's case, the alien carried the burden of proving 'it was plausible (not merely conceivable) that the IJ would have exercised his discretion in the alien's favor.'" *Gonzalez-Flores*, 804 F.3d at 927 (quoting *Rojas-Pedroza*, 716 F.3d at 1263). "In making this determination, we are not concerned with general statistics." *Rojas-Pedroza*, 716 F.3d at 1263. The focus of the inquiry is instead on "whether aliens with similar circumstances received relief." *Id.* "[T]he existence of a single case that is arguably on point means only that it is 'possible' or 'conceivable' that a similarly situated alien would be afforded voluntary departure. That is plainly insufficient . . . ." *United States v. Valdez-Novoa*, 780 F.3d 906, 920 (9th Cir. 2015).

Applying this two-step test, the Court turns first to Mr. May-Delgado's positive and negative equities. Mr. May-Delgado's positive equities include his residence in the United States for nearly a decade, his marriage to a lawful permanent resident, and his three United States citizen children. *See* ECF No. 30-3 at 3. He was the sole provider for his family and worked in the agricultural industry throughout his time in the United States to support them. *Id.* at 2; 3.

ORDER DENYING MOTION TO DISMISS INDICTMENT ~ 11

Mr. May-Delgado's negative equities primarily consist of his eight prior voluntary returns to Mexico.¹ *See* ECF No. 30-7.  Most of these voluntary returns occurred between August and November 2009, with the most recent voluntary return dated March 23, 2010.  *See id.* at 1-7.  In addition to these voluntary returns, Mr. May-Delgado had a minimal criminal history.  *See* ECF 30-4 at 2.  At the time of his removal hearing, the only criminal history Mr. May-Delgado had was an arrest for obstruction more than seven years prior, with no disposition found, and the charge for driving without a license that led to the removal proceeding.  *See id.*

Turning to the second part of the two-step test for prejudice, Mr. May-Delgado argues that he has shown that voluntary departure was plausible, and that he therefore has demonstrated prejudice.  *See* ECF No. 30 at 14.  Mr. May-Delgado cites as support several Board of Immigration Appeals ("BIA") decisions upholding IJ grants of voluntary departure in cases where he claims the noncitizens' equities were less favorable than his.  *See id.* at 13.

---

¹ Mr. May-Delgado's briefing states that he had eight prior voluntary returns, and records in Mr. May-Delgado's Form I-831 indicate the same.  *See* ECF No. 30-4 at 2.  Only seven of the eight Apprehension Reports that Mr. May-Delgado filed, however, list Mr. May-Delgado's surname.  *See* ECF No. 30-7 at 8 (listing surname as "Garza-Perez" and missing details like date and time of apprehension and name of the apprehending Border Patrol agent).  The Court finds that this minor discrepancy has no bearing on its analysis.

ORDER DENYING MOTION TO DISMISS INDICTMENT ~ 12

Nearly all the cases Mr. May-Delgado relies upon, however, are unavailing because they do not present sufficiently analogous facts to the instant case. For example, Mr. May-Delgado cites six BIA cases collected in *United States v. Vasallo-Martinez*, 360 Fed. Appx. 731, 732-33 (9th Cir. 2009). ECF No. 30 at 13. While the noncitizens in these cases had significantly more serious criminal histories than Mr. May-Delgado, the BIA did not mention prior voluntary returns in any of the decisions. *See, e.g.*, *Matter of Gonzales-Figeroa*, 2006 WL 729784 (BIA Feb. 10, 2006) (affirming grant of voluntary departure where noncitizen had four assault convictions, one conviction for resisting arrest, and numerous other arrests, but making no mention of prior voluntary returns); *Matter of Pineda-Castellanos*, 2005 WL 3833024 (BIA Nov. 16, 2005) (affirming grant of voluntary departure where noncitizen had six criminal convictions, including battery, drunkenness, and driving under the influence, but making no mention of prior voluntary returns); *see also Matter of Villalonga Mante*, 2007 WL 1676929 (BIA May 18, 2007) (remanding to IJ to weigh merits of voluntary departure where noncitizen was convicted of sexual battery, but making no mention of prior voluntary returns); *Matter of Guillermo Ramirez*, 2005 WL 698425 (BIA Mar. 8, 2005) (similar); *Matter of Hernandez-Barreto*, 2004 WL 2943517 (BIA Oct. 29, 2004) (similar); *Matter of Reyes-Jimenez*, 2004 WL 2418597 (BIA Oct. 4, 2004) (similar). These cases are therefore immaterial to the Court's inquiry as to "whether aliens with *similar circumstances*

ORDER DENYING MOTION TO DISMISS INDICTMENT ~ 13

received relief." *See United States v. Rojas-Pedroza*, 716 F.3d 1253, 1263 (9th Cir. 2013) (emphasis added).

Mr. May-Delgado also cites *Matter of Sanabria-Dominguez*, 2010 WL 2601495 (BIA May 25, 2010). In that case, the BIA reversed the IJ's determination that the noncitizen had failed to establish that voluntary departure was warranted. *Id.* at *1. The noncitizen's negative equities included "his history of repeated illegal entries to the United States with the assistance of smugglers, record of previous voluntary returns, failure to file tax returns, and driving without a license." *Id.* His positive equities included his residence in the United States, the assistance he provided to his United States citizen wife regarding her addiction and medical condition, his United States citizen son, and his contributions to his community, including his work as a drug counselor and the assistance he provided to his church. *Id.* Because the noncitizen's positive equities outweighed the negative equities, the BIA found that voluntary departure was warranted. *Id.*

While Mr. May-Delgado's positive and negative equities are somewhat similar to those at issue in *Sanabria-Dominguez*, it is difficult to find the two sets of circumstances commensurate without knowing how many previous voluntary returns the noncitizen in *Sanabria-Dominguez* had. Additionally, *Sanabria-Dominguez* is distinguishable from the instant case because Mr. May-Delgado's positive equities

ORDER DENYING MOTION TO DISMISS INDICTMENT ~ 14

are less developed. Therefore, the Court turns to other decisions from the Ninth Circuit, its constituent district courts, and the BIA to inform its findings.[2]

The Court examined Ninth Circuit and constituent district court decisions where the court both applied the two-step test for prejudice and subsequently found prejudice after weighing the positive and negative equities. The Court located only one case where the defendant possessed a similar or more significantly negative immigration history than Mr. May-Delgado's and where the reviewing court made a finding of prejudice. In *United States v. Torre-Hernandez*, No. 1:17-CR-338, 2018 WL 3058857 at *2 (D. Idaho June 20, 2018), the defendant had been removed to Mexico on at least seven prior occasions. The defendant also had two criminal convictions of illegal reentry, as well as other misdemeanor convictions. *Id.* at *4. The court nevertheless found that it was at least plausible that the defendant would have been granted voluntary departure. *Id.* at *5. Although *Torre-Hernandez* lends support to the conclusion that Mr. May-Delgado has carried his burden, a single case that is arguably on point is "plainly insufficient" to demonstrate prejudice." *See United States v. Valdez-Novoa*, 780 F.3d 906, 920 (9th Cir. 2015).

---

[2] The Court includes a selection of these cases in an Appendix to this Order. Due to the inconsistent nature of immigration policy enforcement, the Court surveyed cases where the underlying removal decision was issued during the same presidential administration that was in place when Mr. May-Delgado's removal hearing occurred.

ORDER DENYING MOTION TO DISMISS INDICTMENT ~ 15

The Court's review of additional BIA decisions involving an IJ's denial of voluntary departure where the noncitizen had prior voluntary returns shows that the BIA consistently denies relief to noncitizens who have been granted voluntary returns multiple times. In circumstances where a noncitizen had fewer prior voluntary returns than Mr. May-Delgado and roughly equivalent other equities, like a similarly minimal criminal history and strong family ties, the BIA routinely affirmed the denial of voluntary departure. *See, e.g.*, *Matter of Cruz Moreno*, 2014 WL 3697772 (BIA June 2, 2014) (affirming denial of voluntary departure where noncitizen had two voluntary returns and convictions of purchasing and furnishing alcohol to a minor and criminal mischief, despite positive equities of a United States citizen wife and three children); *Matter of Rafael-Ramirez*, 2013 WL 5872186 (BIA Oct. 18, 2013) (affirming denial of voluntary departure where noncitizen had "at least two voluntary returns from the Border Patrol" and arrests, but not convictions, for domestic assault and leaving the scene of an accident, despite "significant family ties in the United States"); *Matter of Perez-Espinoza*, 2009 WL 3713236 (BIA Oct. 20, 2009) (affirming denial of voluntary departure where noncitizen had five voluntary returns and criminal history involving counterfeit immigration documents, despite history of gainful employment).

Moreover, the BIA emphasized the negative effect of particularly high numbers of prior voluntary returns in its affirmances of voluntary departure denials. *See, e.g.*, *Matter of Lazcano*, 2014 WL 1404582 (BIA Mar. 26, 2014) (affirming

ORDER DENYING MOTION TO DISMISS INDICTMENT ~ 16

denial of voluntary departure where noncitizen had eleven prior voluntary returns over six years and state criminal charges for traffic violations, despite favorable factors including the noncitizen's nine-year presence in the United States, his United States citizen child, and a modest amount of savings, and finding that the noncitizen's "repeated and knowing violations of immigration laws over the last six years outweigh any positive factors" because he "ignored the advisals regarding return to the United States following previous voluntary returns to Mexico"); *Matter of Rosas-Leyva*, 2016 WL 1358004 (BIA Mar. 9, 2016) (affirming denial of voluntary departure where noncitizen had "at least a dozen voluntary returns" between 2000 and 2010 and noting that this constituted "a significant negative immigration history" that outweighed the noncitizen's residence in the United States and a United States citizen son).

      In sum, the weighing of positive and negative equities in Mr. May-Delgado's case demonstrates that he has not met his burden showing prejudice.  His eight prior voluntary returns outweigh his positive equities of length of residence in the United States, family ties, and employment.  A survey of other court decisions involving noncitizens in similar circumstances to Mr. May-Delgado indicates that he does not have a plausible claim for voluntary departure.  Accordingly, the Court concludes that Mr. May-Delgado cannot show prejudice.

      Because the Court finds that Mr. May-Delgado fails to establish prejudice, it is unnecessary to consider the parties' arguments regarding § 1326(d)(1), (d)(2), and

ORDER DENYING MOTION TO DISMISS INDICTMENT ~ 17

the due process element under (d)(3).  *See United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1126 (9th Cir. 2013) (declining to address the merits of defendant's arguments relating to § 1326(d)(3) after finding that the defendant failed to meet his burden under § 1326(d)(2)).

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion to Dismiss Indictment, **ECF No. 30**, is **DENIED**.

2. The Court notes that trial in this matter currently is set to begin April 10, 2023.  *See* ECF No. 28.  The Court invites the parties to move to continue trial in light of this ruling.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** April 5, 2023.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
Senior United States District Judge